[Cite as *In re P.R.P.*, 2018-Ohio-216.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| P.R.P. | : | CASE NO. CA2017-02-026 |
| | : | O P I N I O N<br>1/22/2018 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2016-0085

Repper, Pagan, & Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for appellants.

F. Harrison Green, Executive Park, Suite 230, 4015 Executive Park Drive, Cincinnati, Ohio 45241, for appellee.

**HENDRICKSON, P.J.**

{¶ 1} Appellants, the paternal grandparents of P.R.P. ("Grandparents"), appeal the decision of the Butler County Common Pleas Court, Juvenile Division, denying their petition for companionship or visitation rights with P.R.P. For the reasons discussed below, this court affirms the juvenile court's decision.

{¶ 2} Mother, the appellee, and Father married in 2010. Their child, P.R.P., was born in April 2012. Father, Mother, and P.R.P. lived next door to Grandparents, in a home they

rented from Grandparents. In October 2015, Father collapsed at work and stopped breathing. Father was placed on life support but died several days later. The record is unclear as to the cause of Father's death. There was some indication in the record that Father may have had issues with substance abuse. However, the family ordered an autopsy, which revealed the death was from "natural causes."

{¶ 3} While Father was alive, Mother's and Grandparents' relationship was strained. Following Father's death, the relationship deteriorated. In January 2016, Mother moved with P.R.P. out of the rented home and into her parents' home.

{¶ 4} In February 2016, Grandparents filed a complaint requesting visitation with P.R.P. pursuant to R.C. 3109.11, which allows the relatives of a deceased parent to petition for visitation with the deceased's minor child. The complaint alleged that P.R.P. had lived next door to Grandparents for P.R.P.'s entire life, that Mother ceased all communications with Grandparents, and that Mother was not willing to allow Grandparents to communicate with P.R.P.

{¶ 5} The court held a hearing over two days in August and November 2016. Mother, Grandparents, relatives, friends, and some of Grandparents' neighbors testified. Much of the testimony dealt with the longstanding interpersonal grievances between Mother and Grandparents and had little to do with P.R.P. In this regard, Mother testified that her relationship with Grandparents was "distant" and at times acrimonious.

{¶ 6} With respect to P.R.P., Mother testified that Grandparents only began interacting with P.R.P. to any significant extent in the summer after his third birthday. This testimony was corroborated by Mother's friend who said that she spent significant time with Mother at Mother's house and rarely saw Grandparents until P.R.P. was three years old. Mother testified that Grandparents occasionally watched P.R.P. but that P.R.P.'s maternal grandmother was the child's primary caregiver when Mother was at work.

{¶ 7}   Mother stated that Grandfather confronted her and blocked her vehicle in the driveway when she was moving out of the rented home.  Grandfather threatened to tell P.R.P. that Mother's behavior caused Father's death and that Mother was a "horrible" person. Grandfather also told Mother that P.R.P. would be "better off" being raised by Grandparents.

{¶ 8}   Mother testified that she did not want Grandparents to have visitation with P.R.P. because she believed they intended to seek custody of P.R.P. and that they intended to demean her in P.R.P.'s presence.

{¶ 9}   During his testimony, Grandfather denied that he accused Mother of causing Father's death and said that he knew that Father died of "natural causes."  Later in his testimony, Grandfather conceded that he told Mother that "you could have saved" Father. Grandfather also admitted telling persons in the hospital that Mother finally "pushed [Father] over the edge" and that she could have been a better wife to Father.  Grandfather explained that his comments referred to his belief that Mother had an affair and treated Father poorly during the marriage.  Grandfather admitted that he received Father's cellular phone from Father's work and refused to return it to Mother despite her request.

{¶ 10}   Grandfather conceded that he would anger Mother by giving candy to P.R.P. despite Mother's instructions otherwise.  Grandfather testified that he would give P.R.P. another piece of candy after Mother became angry with him. Father's sister also testified that Mother did not like for Grandparents to watch P.R.P. because they would give him candy and would not put him down for naps.  Additionally, Grandparents would not give P.R.P. snacks at the time Mother requested.

{¶ 11}   Grandfather introduced numerous photographs taken in 2015 depicting Grandfather and the paternal side of the family playing with and interacting with P.R.P. Grandfather stated that he and Grandmother were seeking visitation with P.R.P. because P.R.P. loved spending time with them and that not seeing his grandparents would be "mental

abuse."

{¶ 12} Mother called several witnesses to testify. One witness testified that she was at the hospital following Father's collapse and heard Father's family expressing hatred towards Mother. Another witness said she heard Grandfather state that Mother killed Father, which he stated in front of many people.

{¶ 13} Following the hearing, the court issued an order finding that Grandparents did not meet their burden to establish that it was in P.R.P.'s best interest to establish visitation with Grandparents. The court observed that Mother's desire to deny Grandparents visitation was neither "unreasonable" nor "irrational" because Grandparents did not respect Mother's rules regarding P.R.P.'s diet and nap times and because Grandfather threatened he would tell P.R.P. that Mother caused Father's death because of the stress Mother allegedly put Father through during their marriage.

{¶ 14} Grandparents appeal, raising three assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE COURT APPLIED THE WRONG TEST TO DETERMINE GRANDPARENT VISITATION.

{¶ 17} Grandparents argue that the court analyzed their visitation petition by erroneously requiring them to prove that Mother's desire to deny them visitation was "irrational" or "unreasonable" before analyzing whether visitation was in P.R.P.'s best interest according to the factors set forth in R.C. 3109.051(D). Mother contends that the court applied the appropriate test for nonparental visitation, by reviewing each best-interest factor while giving special weight to Mother's wishes.

{¶ 18} This court employs the de novo standard of review on questions relating to the proper appropriate legal standard or test. *See generally Roberts v. Mike's Trucking, Ltd.*, 12th Dist. Madison Nos. CA2013-04-011 and CA2013-04-014, 2014-Ohio-766, ¶ 24. A

- 4 -

parent has a fundamental right to make decisions regarding the care, custody, and control of her own child. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054 (2000). Grandparents, however, have no constitutional right of association with their grandchildren. *In re A.B.*, 12th Dist. Butler No. CA2015-06-104, 2016-Ohio-2891, ¶ 39, citing *In re Martin*, 68 Ohio St.3d 250, 252 (1994). Instead, grandparent and other nonparent visitation rights are only as provided by statute. *Id.* Because parents have a fundamental right to raise their child and certain relatives only have a statutory right to visitation, the nonparent has the burden of proving that visitation is in the child's best interest. *Id.*, citing *In re N.C.W.,* 12th Dist. Butler No. CA2013-12-229, 2014-Ohio-3381, ¶ 25.

{¶ 19} Grandparents' right to visitation rests on the provisions of R.C. 3109.11, which provide in relevant part:

> If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. * * *.

The best interest factors the court must consider if relevant are:

> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
>
> (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's

residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or

a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child. * * *. R.C. 3109.051(D).

{¶ 20} The 15th factor is of "particular importance" because of the United States Supreme Court's ruling in *Troxel. In re A.B.*, 2016-Ohio-2891 at ¶ 41. There, the Court held – with respect to a Washington state nonparent visitation statute – that a fit parent's decision with respect to nonparent visitation must be accorded "some special weight." *Troxel*, 530 U.S. 57 at 69, 70. The Ohio Supreme Court has extended the rationale of *Troxel* to Ohio's nonparent visitation statutes. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, at paragraph one of the syllabus. The court held that "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation." *Id.* at ¶ 12. Neither the United States Supreme Court nor the Ohio

Supreme Court have defined the precise meaning of "some special weight," although the Ohio Supreme Court used the phrase "due deference" in describing the concept. *Id.* at ¶ 45.

{¶ 21} After thoroughly reviewing the record and the trial court's decision, this court finds that the juvenile court properly applied the pertinent law. The court complied with R.C. 3109.11 by considering each relevant best-interest factor under R.C. 3109.051(D). Because Grandparents did not argue or submit any evidence that Mother was an unfit parent, the court properly indicated that it would give special weight to Mother's wish not to allow visitation while also considering the remaining factors.

{¶ 22} Grandparents argue that the court ignored the other best-interest factors and simply deferred to Mother's wishes. However, nothing in the record or the court's written decision supports that contention. The decision, which consists of nine single-spaced pages, contains a discussion of each relevant best-interest factor. If the court had simply deferred to Mother's wishes without consideration of those mandatory factors there would have been no need to go through this thorough analysis.

{¶ 23} The court indicated that it found that Mother's desire not to grant visitation to Grandparents was neither "unreasonable" nor "irrational" given Mother's concerns with Grandfather's refusal to follow her rules and his threat to demean her to P.R.P. Grandparents argue that the law did not require them to prove that Mother's wishes were unreasonable or irrational and that the court used this requirement as a condition precedent before reviewing the best-interest factors.

{¶ 24} The relevant Revised Code provisions do not appear to specifically require the petitioner to produce any proof of lack of reasonableness or rationality with respect to a parent's position on visitation. Upon review, the lower court seems to have taken the "reasonable" and "rational" language from a portion of this court's opinion in *In re A.B.* where the opinion quoted from the lower court's written decision. *In re A.B.*, 2016-Ohio-2891 at ¶

31. That quotation, however, was simply a recitation of the lower court's decision in the opinion's factual section. The lower court did not support that language with any citation to law. Nor did this court adopt the trial court's decision as its own.

{¶ 25} It is not clear whether the lower court believed it was required to find that Mother's wishes were reasonable and rational. Regardless, any error with respect to this issue is harmless. The conclusion that Mother's position was reasonable and rational simply supports the court's decision to give special weight to Mother's wishes. If the court had instead found Mother's position on visitation unreasonable or irrational then necessarily the court would have given less weight to her position while weighing the best-interest factors.

{¶ 26} Grandparents also argue that the court erred when it stated it was required to give "extreme deference" to Mother's wishes. This court has previously used the phrases "extreme deference" and "great deference" in describing the special weight to be afforded a parent's position with respect to nonparent visitation claims. *In re N.C.W.*, 2014-Ohio-3381 at ¶ 38; *In re A.B.* at ¶ 41, citing *In re E.T.B.*, 12th Dist. Clermont No. CA2014-07-051, 2015-Ohio-2991, ¶ 30; *In re J.T.S.*, 12th Dist. Preble No. CA2014-09-009, 2015-Ohio-364, ¶ 26. As discussed above, neither the United States Supreme Court nor the Ohio Supreme Court has defined "special weight." For purposes of clarity, this court intends to discontinue the use of other descriptive phrases for the "special weight" to be afforded a parent's wishes. The law is clear that regardless of a parent's motivations, a court is required to give special weight to their wishes in accordance with *Troxel and Harrold.* Nonetheless, the court must balance the parent's wishes against the other best-interest factors and the parent's wishes are never paramount to the child's best interest. *In re N.C.W.* at ¶ 36 (observing that "nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest"). This court concludes that the juvenile court's decision in this case was correct whether the court applied "special weight" or "extreme deference" to Mother's wishes because the record contained

credible evidence supporting Mother's desire for no visitation with Grandparents. In sum, the record reflects that the court applied the appropriate legal analysis to Grandparents' petition for nonparent visitation. This court overrules Grandparents' first assignment of error.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE MAGISTRATE FAILED TO STATE WHETHER IT DIRECTED A JUDGMENT TO MOTHER OR ADJUDICATED THE VISITATION PETITION ON THE MERITS.

{¶ 29} In their second assignment of error, Grandparents argue that the court erred by dismissing their visitation petition without "clearly indicating whether [its] basis was a directed judgment or a merits adjudication." After Grandparents' case in chief, Mother's attorney orally moved the court to find "in accordance with the statute and the case law" that Grandparents did not have a right to visitation. Mother's attorney did not use the phrase "directed verdict."[1] After Mother and Grandparents both argued their positions on Mother's oral motion, the court announced that it was not going to rule from the bench and might later ask the parties to file briefs on their respective positions. The trial resumed and Mother presented her case in chief.

{¶ 30} As to how this alleged error prejudiced Grandparents, Grandparents argue that the legal basis of the juvenile court's decision affects this court's standard of review. Grandparents argue that if the court directed a verdict in Mother's favor, the standard of review is for sufficiency of the evidence. If the court adjudicated the case on the merits, this court would review for an abuse of discretion.[2]

---

1. Grandparents characterize Mother's oral motion as one for a directed verdict or judgment. However, directed verdicts are not permitted in a bench trial. *Heath v. Heath*, 12th Dist. Fayette No. CA2016-08-011, 2017-Ohio-5506, ¶ 34. Instead, Mother's motion following the end of Grandparents' case in chief would properly be construed as a motion for an involuntary dismissal pursuant to Civ.R. 41(B)(2).

2. Again, because directed verdicts are not applicable in a bench trial, had we been reviewing the court's ruling on an involuntary dismissal pursuant to Civ.R. 41(B)(2) our standard of review would have called for a manifest

{¶ 31} However, the standard of review is not a relevant concern in this appeal because Grandparents did not separately assign error to the trial court's decision that visitation was not in P.R.P.'s best interest. Instead, Grandparents argued in the first assignment of error that the court used an erroneous legal standard to determine the visitation petition. As discussed above, we reviewed that issue de novo and overruled the assignment of error. Grandparents' third assignment of error argues that the court erred in admitting certain evidence, but also does not substantively challenge the underlying decision that visitation was not in P.R.P.'s best interest.

{¶ 32} Nonetheless, the juvenile court's decision consisted of nine pages of detailed factual findings and conclusion of law. At the end of the decision the court wrote: "[t]he complaint for visitation (grandparents' companionship rights) filed February 26, 2016, by [Grandparents] is not well taken and the same shall be dismissed." The record is clear that the court determined Grandparents' petition on the merits. This court overrules Grandparents' second assignment of error.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE COURT ERRED BY ADMITTING A SETTLEMENT STATEMENT IN EVIDENCE.

{¶ 35} In their third assignment of error, Grandparents argue that the court erred in admitting into evidence Mother's statement about an alleged threat made by Grandfather while the parties were in a settlement conference. The juvenile court initially overruled Grandparents' objection to Mother's anticipated testimony, stating that it did not believe that a threat made during a settlement conference was inadmissible. Accordingly, the court allowed Mother to testify that Grandfather told her at the settlement conference that he would tell

---

weight analysis. *See ALH Properties v. Procare Automotive Serv.*, 9th Dist. Summit No. 20991, 2002-Ohio-4246, ¶ 8-12.

P.R.P. that she was a "horrible" person and "what I did" to P.R.P.'s father. After hearing Mother's testimony, the court sua sponte reconsidered its previous ruling about the admissibility of the statement and asked the parties to brief the issue after the trial.

{¶ 36} While the parties later briefed the statement's admissibility, the juvenile court's decision does not address the issue. Moreover, the lower court did seem to consider this testimony as it generally referred to Mother's concerns that Grandfather threatened to demean her if allowed to communicate with P.R.P.

{¶ 37} Grandparents argue that Mother's statement was inadmissible pursuant to Evid.R. 408. Mother argues that her testimony was not precluded under Evid.R. 408 because it was not offered to disprove Grandparents' claim to visitation, but rather to demonstrate that Grandfather made threats in order to pressure Mother into granting visitation. Alternatively, Mother argues that the admission of Grandfather's out-of-court statement was harmless error because Grandfather made similar statements outside of settlement proceedings, which were properly introduced into evidence.

{¶ 38} We review the lower court's decisions on the admissibility of evidence under the abuse of discretion standard. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 80. Evid.R. 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

{¶ 39} The parties do not dispute that Grandfather's alleged statements occurred during a settlement conference. Evidence of a threat to demean Mother would be relevant to the court's consideration of whether Grandfather was a suitable person to allow visitation with P.R.P. and whether visitation would be in P.R.P.'s best interest. Thus, this evidence would be relevant to proving the invalidity of Grandparents' claim for visitation. Consequently, because no exception to Evid.R. 408 applies, Mother's testimony was inadmissible and the court erred to the extent it permitted the statement. However, we agree with Mother that any error was harmless.

{¶ 40} Civ.R. 61 provides that:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶ 41} Mother testified that Grandfather made similar, and in fact, more specific, threats to her months before the settlement conference. Mother claimed that during a confrontation in her garage Grandfather told her that she caused Father's death and that Grandfather "was going to make sure that [P.R.P.] knew that him and [Grandmother] would be better off raising my child and umm… basically I, I, basically I was just [a] horrible, horrible person, that I ran around on his son, I had multiple affairs and basically that he, [P.R.P] was going to know all of it and [P.R.P.] was going to grow up to pretty much hate me." Accordingly, Mother's inadmissible testimony concerning Grandfather's threat at the settlement conference was largely duplicative of other admissible testimony, and this error did not affect Grandparents' substantial rights. This court overrules Grandparents' third assignment of error.

{¶ **42**}   Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.