[Cite as *In re Flynn*, 2021-Ohio-4456.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| Ashley E. Flynn et al., | : | No. 20AP-506 |
| | | (C.P.C. No. 20DR-3133) |
| Petitioners-Appellees, | : | |
| | | (REGULAR CALENDAR) |
| [Paula Sauer, | : | |
| Movant-Appellant]. | : | |

D E C I S I O N

Rendered on December 16, 2021

**On brief**: *Amy Levine & Associates*, and *Brian H. Henderson*, for petitioner-appellee, Joseph P. Flynn. **Argued**: *Brian H. Henderson*.

**On brief**: *Petroff Law Offices LLC, Christopher L. Trolinger*, and *Ronald R. Petroff*, for appellant. **Argued**: *Christopher L. Trolinger*.

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations

BROWN, J.

{¶ 1} Appellant, Paula Sauer, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying her motion for visitation/companionship rights with a minor child.

{¶ 2} On September 10, 2020, petitioners-appellees, Ashley E. Flynn and Joseph P. Flynn, filed a petition for dissolution of marriage as well as a plan for shared parenting. The parties also filed a property settlement and separation agreement.

{¶ 3} On September 23, 2020, appellant filed a motion to intervene as a third-party pursuant to Civ.R. 75(B)(3). In that motion, appellant, asserting she was the great aunt of

S.F. (a minor born September 2014), sought to "protect her interest and request for companionship time with the minor child." (Mot. to Intervene at 2.) Also on that date, appellant filed a motion for visitation/companionship rights with the minor child.

{¶ 4} On October 21, 2020, the trial court conducted a hearing on appellant's motion for visitation/companionship rights. The sole witness at the hearing was appellant, who testified that appellee, Joseph P. Flynn (individually "Joseph"), is her "first nephew." (Tr. at 9.) Appellant stated that she had been involved in Joseph's "entire life, and at [age] 13 he came to live with us." Appellant "had full custody" of Joseph when he was 13 years of age. (Tr. at 10.)

{¶ 5} Joseph and appellee, Ashley E. Flynn (individually "Ashley"), eventually married and had a son, S.F. When Ashley returned to work, 12 weeks after the birth of S.F., appellant "started babysitting [S.F.] three days a week and continued to do so until his fourth birthday, the day of his fourth birthday." (Tr. at 11.) During this time, appellant would see the minor child "[t]hree days every week at least - - usually three to four nights, overnight visits, weekend visits, vacations." According to appellant, "we were very involved with each other." (Tr. at 12.)

{¶ 6} At the time of the hearing, appellant had not seen S.F. for "[t]wo years and 42 days." The last date appellant saw S.F. was September 9, 2018, "two days after his birthday * * * party." Appellant testified that Joseph "stopped allowing me to see [S.F.]." (Tr. at 13.) Appellant stated she was not seeking custody or permanent placement of S.F., but rather visitation rights, and that she "would love one weekend a month" of visitation. (Tr. at 15.)

{¶ 7} In response to an inquiry as to why she no longer sees S.F., appellant related an incident in September 2018, when she was watching S.F. Appellant testified that she "also babysat at the time [S.F.'s] younger cousin * * *, another son's daughter," and the cousin "was kind of a bully, and [S.F.] started whining. And I went in to see what was going on, and I reprimanded [the cousin]." (Tr. at 17-18.) Appellant told the cousin to "[g]et off of [S.F.], stop doing that, * * * and [Joseph] got angry with me." Appellant testified that she and Joseph "got into a heated debate. I asked him to leave multiple, multiple times. I finally waited him out, and he left." (Tr. at 18.)

{¶ 8} Over the next few days, appellant took care of S.F. Later that week, on a Thursday, appellant phoned Joseph and asked if he would "mind picking [S.F.] up tonight

at preschool, because I had had the kids for two days and I was tired. And he said yes; and he texted me and said, [w]e have a problem. I just picked up my son at school. He acted like I was an ax murderer." (Tr. at 18-19.)

{¶ 9} Appellant stated: "I haven't seen [S.F.] since." Appellant testified she had made "many" attempts to see S.F. since that incident. When asked whether she thought Ashley would be in favor of her being granted companionship, appellant responded: "I don't know." (Tr. at 19.) Appellant believed Joseph was holding this over Ashley's head in order to "sign a dissolution agreement." (Tr. at 20.)

{¶ 10} On October 28, 2020, the trial court filed an entry denying appellant's motion for visitation and/or companionship rights with the minor child. The court also denied and dismissed appellant's motion to intervene.

{¶ 11} On appeal, appellant sets forth the following five assignments of error for this court's review:

> [I.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR COMPANIONSHIP TIME PURSUANT TO R.C. § 3109.051(B) AND (D) AS SUCH IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [II.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER ONLY THE EVIDENCE ON THE RECORD.
>
> [III.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY UTILIZING SPECULATION REGARDING THE POSITION OF THE APPELLEES WHEN APPELLEES FAILED TO APPEAR AT THE HEARING OR OPPOSE APPELLANT'S MOTION.
>
> [IV.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THE PARENTS' WISHES AND PARENTING SCHEDULE TO BE IN THE CHILD'S BEST INTEREST WITHOUT ANY TESTIMONY OR EVIDENCE PRESENTED AS TO SAID WISHES OR SCHEDULE AND SUCH WAS AGAINST THE MAINFEST WEIGHT OF THE EVIDENCE.
>
> [V.] THE TRIAL COURT'S FACTUAL FINDINGS REGARDING PARENTAL WISHES AND BEST INTEREST OF THE CHILD ARE AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE AS NO CONTRARY EVIDENCE WAS PRESENTED CONTRA APPELLANT'S MOTION FOR COMPANIONSHIP TIME AND SUCH IS AN ABUSE OF DISCRETION.

{¶ 12} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant asserts the trial court erred in: (1) denying her motion for companionship time, (2) failing to consider only the evidence in the record, (3) utilizing speculation regarding the position of appellees, and (4) finding the parents' wishes and parenting schedule to be in the child's best interest. Appellant also contends the trial court's factual findings regarding parental wishes and the best interest of the child are against the manifest weight of the evidence.

{¶ 13} Courts have recognized the "well-established" principle that "a parent has a fundamental right to make decisions regarding the care, custody, and control of [his or] her children." *In re A.B.,* 12th Dist. No. CA2015-06-104, 2016-Ohio-2891, ¶ 39, citing *Troxel v. Granville,* 530 U.S. 57, 66 (2000). In "contrast, grandparents and other nonparent relatives have no constitutional right of association with the children." *Id.,* citing *In re Martin,* 68 Ohio St.3d 250, 252 (1994). Accordingly, "[g]randparents and other nonparent relatives * * * may only be granted visitation rights as provided by statute." *Id.,* citing *Martin* at 252. Pursuant to R.C. 3109.051(B), a trial court may grant reasonable visitation rights to a grandparent or nonparent relative "if the court determines that such visitation is in the child's best interests." *In re N.C.W.,* 12th Dist. No. CA2013-12-229, 2014-Ohio-3381, ¶ 20.

{¶ 14} There exists a presumption that "fit parents determine the best interests of their children," and therefore the burden of proving that the best interest of the child "warrants nonparent visitation rests with the nonparent." *In re K.M.-B.,* 6th Dist. No. L-15-1037n, 2015-Ohio-4626, ¶ 43, citing *In re N.C.W.* at ¶ 25-26.[1] *See also In re P.R.P.,* 12th Dist. No. CA2017-02-026, 2018-Ohio-216, ¶ 18 ("Because parents have a fundamental right to raise their child and certain relatives only have a statutory right to visitation, the nonparent has the burden of proving that visitation is in the child's best interest.").

---

[1] We note, in the instant case, appellant's motion did not allege, nor did the hearing record evidence suggest, that either the father or mother are unfit parents.

{¶ 15} An appellate court's standard of review with respect to a trial court's decision to grant or deny a nonparent's motion for visitation/companionship is "abuse of discretion." *A.B.* at ¶ 39, citing *N.C.W.* at ¶ 20. An abuse of discretion constitutes "more than an error of law or judgment; it requires a finding that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). While a reviewing court "will not reverse a 'decision regarding visitation rights * * * except upon a finding of an abuse of discretion[,]' * * * [f]actual findings by the trial court * * * are reviewed 'under a manifest weight of the evidence standard.' " *Jenkins v. Jenkins,* 9th Dist. No. 18CA011414, 2019-Ohio-4909, ¶ 13, quoting *Loewen v. Newsome,* 9th Dist. No. 28107, 2018-Ohio-73, ¶ 15.

{¶ 16} R.C. 3109.051(B) states as follows:

> (1) In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:
>
> (a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.
>
> (b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.
>
> (c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child.
>
> (2) A motion may be filed under division (B)(1) of this section during the pendency of the divorce, dissolution of marriage, legal separation, annulment, or child support proceeding or, if a motion was not filed at that time or was filed at that time and the circumstances in the case have changed, at any time after a decree or final order is issued in the case.

{¶ 17} In determining whether to grant visitation rights to a nonparent relative, a trial court "is required to consider all relevant factors, including the factors listed in R.C. R.C. 3109.051(D)." *A.B.* at ¶ 40.

{¶ 18} R.C. 3109.051(D) provides in relevant part as follows:

In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 19} On appeal, appellant argues the trial court "clearly entertained a predetermined agenda," and that the court "essentially crafted evidence and arguments for the Appellees despite the fact * * * the Appellees failed to appear or present any evidence or testimony" at the hearing. (Appellant's Brief at 15.) Appellant further contends there was no evidence presented to determine that her companionship with the minor child was not in the child's best interest. In this respect, appellant takes issue with the trial court's consideration of appellees' shared parenting plan.

{¶ 20} At the outset, regarding appellant's contention that appellees failed to appear at the hearing, the trial court addressed that issue in its decision, noting "it has now come to the Court's attention that the [appellees] were not properly served for the October 21, 2020 hearing." The trial court found, however, "given the Court's disposition of Movant's Motions herein, this procedural defect is now immaterial." (Decision at 1.)

{¶ 21} Following the hearing on October 21, 2020, the trial court issued a decision addressing each of the factors under R.C. 3109.051(D). The primary focus of the trial court's analysis was on the factors under R.C. 3109.051(D)(1) (addressing the child's interaction and relationship with parents, siblings, and significant persons) and R.C. 3109.051(D)(15) (addressing the wishes and concerns of the child's parents with respect to requested visitation/companionship). In considering factor (D)(1), the trial court found appellant "credibly testifies that she loves the Minor Child," and that appellant also "concedes that she has not seen the Minor Child since about September 9, 2018" following a "heated debate between herself and Father about an incident that occurred while the Minor Child was in [appellant's] care." The trial court further noted "the parties' Shared Parenting Plan allows for almost equal parenting time for Mother and Father." (Decision at 2.)

{¶ 22} As to the factor under R.C. 3109.051(D)(15), the trial court cited appellees' "Shared Parenting Plan filed September 10, 2020 as a clear indication of their position on the instant matter."   The trial court noted "the Plan provides a regular and holiday parenting time schedule with no companionship or visitation time afforded to anyone else." The court further noted "the Plan, signed by both parties, specifically reads, 'Mother is not permitted to provide the child with visitation with any of Father's family.' "  (Decision at 4.)

{¶ 23} In addition to considering each of the factors under R.C. 3109.051(D), the trial court also addressed (and found distinguishable) a case relied upon by appellant, *Doughty v. Doughty,* 5th Dist. No. 18 CAF 05 0040, 2019-Ohio-974, in which the Fifth District Court of Appeals upheld a visitation request by a paternal grandmother. Specifically, the trial court in the instant case outlined what it deemed "several important distinctions between this case and *Doughty,*" holding in part:

> First, in *Doughty* one parent supported the motion, father. Here, Father categorically rejects Movant's (who stood in *loco parentis* to Father during the time of his minority) position and specifically desires her not to be involved in the rearing of his child.
>
> Second, these parties are married and equally, positively involved in [S.F.'s] life.  While acknowledging that * * * Movant does not seek "grandparent's rights," she does compare and equate herself to [S.F.'s] grandmother – despite the fact that she is not the Child's grandparent.
>
> Third, Movant cannot articulate specifically why she was ultimately prohibited from contacting and visiting with the Minor Child. * * * Movant purely speculates that the "heated debate" between herself and Father is the cause of Movant's exclusion from [S.F.'s] life.
>
> Fourth, having been excluded from this child's life for more than 2 years now, the Court is not certain Movant can affirmatively speak to the Child's best interest.  Just as the *Doughty* case warns putting the parents' wishes above the child's best interest, this Court must also balance Movant's wishes against the Child's best interest.
>
> * * *
>
> Here, unlike in *Doughty,* Mother and Father agree as to all parental rights and responsibilities of the Minor Child;

specifically, the Minor Child's schedule. Movant seeks a court order granting her an award of time ranging from every other weekend to one, 2-hour evening per week. Again, the Minor Child last saw Movant in 2018, when he was 4 years old. While the parents' wishes are not dispositive of whether or not a motion for companionship or parenting time is granted, this Court emphasizes that the parties have settled on the matter of this Minor Child's schedule, which this Court favors. Accordingly, upon consideration of [R.C.] 3109.051(D)(1)-(16), this Court declines to unravel the Petitioners' shared parenting agreement and interfere with either Mother and Father's rights and against the Minor Child's best interest and his right to time with his parents.

(Decision at 5-6.)

{¶ 24} With respect to the trial court's consideration of the parents' shared parenting plan, we find no error. In accordance with Evid.R. 201(C), "a trial court may take judicial notice of its own proceedings in the immediate cause under consideration." *In re Cavender*, 12th Dist. No. CA2000-06-037 (Mar. 19, 2001) (trial court could properly take judicial notice of relevant evidence adduced in dependency proceeding in making permanent custody determination where dependency adjudication, "filed under the same case number as the motion for permanent custody, is part and parcel of the immediate cause under consideration"). *See also Eckmeyer v. McNealis*, 9th Dist. No. 27707, 2016-Ohio-7276, ¶ 12 ("A trial court may take judicial notice of prior proceedings in the immediate case."); *Helfrich v. Madison,* 5th Dist. No. 11 CA 26, 2012-Ohio-551, ¶ 39 (noting "Evid.R. 201 governs the trial court's ability to take judicial notice of adjudicative facts, or the facts of the case").

{¶ 25} In the present case, the shared parenting plan was part of the underlying case (and was filed prior to appellant's complaint for visitation/companionship). Contrary to appellant's contention, we find the shared parenting plan was properly before the trial court, i.e., the court was permitted to take judicial notice of the earlier proceedings in the "immediate case" before it. *McNealis* at ¶ 12.

{¶ 26} Appellant contends a review of the applicable factors weigh in favor of granting companionship time to appellant and the child. According to appellant, the only evidence before the trial court was that the companionship request was in the child's best interest.

{¶ 27} As indicated above, the focus of the trial court's analysis involved the factors under R.C. 3109.051(D)(1) and (15). Ohio appellate courts have recognized the factor under R.C. 3109.051(D)(15) "is of 'particular importance' because of the United States Supreme Court's ruling in *Troxel.*" *P.R.P.* at ¶ 20. Specifically, in *Troxel*, the United States Supreme Court "held – with respect to a Washington state nonparent visitation statute – that a fit parent's decision with respect to nonparent visitation must be accorded 'some special weight.' " *Id.*, quoting *Troxel* at 70.

{¶ 28} The Supreme Court of Ohio has extended the rationale in *Troxel* "to Ohio's nonparent visitation statutes." *Id.,* citing *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, paragraph one of the syllabus. In *Collier*, "[t]he court held that 'Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation.' " *Id.,* quoting *Collier* at ¶ 12. The Supreme Court noted "[i]n fact," that special weight "is required by R.C. 3109.051(D)(15) since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making its 'best interest of the child' evaluation." *Collier* at ¶ 43. While "[n]either the United States Supreme Court nor the Ohio Supreme Court have defined the precise meaning of 'some special weight,' * * * the Ohio Supreme Court used the phrase 'due deference' in describing the concept." *P.R.P.* at ¶ 20, quoting *Collier* at ¶ 45. Finally, "while *Troxel* states that there is a presumption that fit parents act in the best interest of their children, nothing in *Troxel* indicates that this presumption is irrefutable." *Collier* at ¶ 44.

{¶ 29} In the present case, the trial court properly considered each of the factors under R.C. 3109.051(D), and it is clear the court accorded "some special weight," as permitted under Ohio law, to the parents' visitation wishes and concerns as set forth in the shared parenting plan. As cited by the trial court, that plan, which was signed by both parents prior to the filing of appellant's motion, provided "[m]other is not permitted to provide the child with visitation with any of Father's family."

{¶ 30} The trial court, recognizing that "the parents' wishes are not dispositive," also weighed the other applicable statutory factors. (Decision at 6.) The trial court found that appellant, while credibly testifying she loves the minor child, conceded she had not seen the child since September 2018. The court further cited a lack of clarity in appellant's testimony

regarding the conflict between herself and father, including the events surrounding her last visitation with S.F. Appellant contends the rift that arose between her and father was "of a trivial matter" that should not prevent her from having a relationship with the child. (Appellant's Brief at 16.) The trial court, however, who heard the testimony of appellant, found that she could not "articulate specifically why she was ultimately prohibited from contacting and visiting with" the minor child. (Decision at 5.) To the extent appellant challenges the factual findings of the trial court, matters of credibility "are primarily for the trier of fact." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Here, the trial court was in the best position to determine issues of credibility and to consider appellant's explanation as to the apparent conflict between her and father. On review, the factual findings by the trial court as to the R.C. 3109.051 factors are not against the manifest weight of the evidence.

{¶ 31} Here, in accordance with R.C. 3109.051(D)(15), the trial court considered the parents' wishes regarding visitation, and the court also considered and weighed the remaining statutory factors in determining whether the visitation/companionship request was in the best interest of the child. Based on the record presented, we find no abuse of discretion by the trial court in denying appellant's motion for visitation/companionship.

{¶ 32} Based on the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

_____