**[Cite as *In re A.R.*, 2023-Ohio-394.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re: A.R., J.R., C.R.

Court of Appeals No.   OT-22-023
OT-22-024
OT-22-025

Trial Court No.  2020JUV252
2020JUV253
2020JUV254

**DECISION AND JUDGMENT**

Decided: February 10, 2023

* * * * *

Andrew R. Mayle, Benjamin G. Padanilam, and
Ronald J. Mayle, for appellant.

Ann M. Baronas, for appellee.

* * * * *

**ZMUDA, J.**

**{¶ 1}** This consolidated matter is before the court on appeal of the judgment of the

Ottawa County Court of Common Pleas, dismissing the complaint for grandparent

visitation of appellant, B.H., for lack of standing under R.C. 3109.12(A).  We affirm the

dismissal for lack of standing but vacate the trial court's determination that the dismissal was on the merits and with prejudice.

## I. Facts and Procedural History

{¶ 2} In 2020, appellant initiated proceedings in the juvenile court to obtain full legal custody of A.L.R. (d.o.b. 6/23/16), J.E.R. (d.o.b. 2/14/18), and C.L.R. (d.o.b. 3/16/19), alleging the parents could not provide proper care for the three children. All three children were born to appellee, J.R., who was not married at the time of giving birth to any of her children. The putative father (C.H.), who is appellant's son, opposed appellant's suit in the trial court but is not a party on appeal.

{¶ 3} In December 2020, the appellant and appellee reached a temporary agreement regarding visitation. Appellant agreed to hold her complaint for custody in abeyance for six months, with visitation, while appellee sought mental health treatment and participated in a voluntary parenting program through Ottawa County Job and Family Services. The record reflects that appellee's children have never been determined to be neglected or abused, requiring intervention and case plan services by children services.

{¶ 4} In March 2021, the court-appointed special advocate (CASA) reported to the trial court that appellee was doing well with her parenting plan and recommended custody remain with appellee, with continuing visitation for appellant. After appellant filed a motion to remove the CASA assigned to the case, alleging bias and deficient performance of the duties of a CASA, the trial court appointed an attorney as guardian ad litem for the children.

2.

{¶ 5} In September 2021, the matter was called for trial on the complaint for custody. Appellant withdrew her complaint for custody and sought leave to file a complaint for visitation. Appellant subsequently filed an original complaint for grandparent visitation, pursuant to R.C. 3109.12, and on April 19, 2022, the matter proceeded to trial.

{¶ 6} At the trial, appellant proffered the testimony of Joann Hoffmann as evidence of paternity. Hoffman appeared as custodian of records for the Ottawa County Child Support Enforcement Agency (CSEA) and testified regarding the history of child support payments made for the two oldest children, with direct testimony regarding parentage as follows:

> Q: When a Child Support Order is issued through your agency, is a legal determination of fatherhood or paternity normally made?
>
> A: It's required.
>
> Q: Okay. So, if there is a Child Support Order in effect, it is determined, required that the father be identified and that the person who is the obligor or obligee, depending on the situation, is found to be the actual parent of the children?
>
> A: Correct.
>
> Q: Thank you. Thank you.

{¶ 7} Counsel then reviewed documents with Hoffmann, supplied by her for the hearing, which detailed child support payments made by C.H. Counsel also proffered a

3.

copy of a court order for two of the children, ordering child support, and a Verification of Facts on Birth Record printout for each child, identifying C.H. as father. The trial court admitted the composite exhibit over the objection of appellee, who argued the documents were not disclosed prior to trial and the documents did not include paternity affidavits, or legal acknowledgments of paternity.

{¶ 8} Following the trial, the trial court denied and dismissed appellant's complaint, finding appellant failed to demonstrate the statutory prerequisites to seek visitation, as provided by R.C. 3109.12(A). As to Hoffmann's testimony and the requirement of a paternity determination, the trial court found the following:

I discounted Ms. Hoffmann's testimony on the issue of [C.H.] being 'the legal and lawful parent to all three of the minor children.' Ms. Hoffmann was only qualified to speak to the existence of the records and the process that led to their creation and maintenance – not their legal significance. She was never asked if her file contained acknowledgments of paternity or administrative or judicial determinations of paternity. * * *

Testimony elicited at the hearing does not obviate the need for proof of the predicate conditions listed in R.C. 3109.12(A). Grandmother was required to submit either finalized acknowledgments of paternity for the children under R.C. 3111.21 or determinations of paternity under R.C. 3111 *et seq.,* as required by the plain and unambiguous language of the statute. At a minimum, she was required to submit copies of the children's birth

certificates so the court could infer the existence of paternity acknowledgments or paternity determinations, see R.C. 3705.09(G). She did not do that.

The legislative intent seems clear to me. Before a paternal grandmother may seek court-ordered visitation with her grandchildren, she must first show paternity is an established, unimpeachable fact by way of recorded acknowledgments of paternity or determinations of paternity under Chapter 3111.

{¶ 9} The trial court found appellant was not entitled to court-ordered visitation because she failed to first establish paternity as provided under R.C. 3109.12(A). The court's decision was limited to this standing requirement, with no consideration of the best interests of the children under R.C. 3109.12(B). However, despite limiting the decision to statutory standing, the trial court ordered the complaint for visitation dismissed "on the merits, with prejudice."

{¶ 10} This appeal followed.

## II. Assignments of Error

{¶ 11} In challenging the judgment, appellant raises the following as error:

1. The trial court erroneously held that before it could consider whether 'granting Grandmother visitation rights would be in the children's best interest,' it had to first determine whether the grandmother established the 'predicate conditions' mentioned in R.C. 3109.12(A).

2.      Even if the appellant grandmother was required to prove paternity by showing that certain statutory 'predicate conditions' were fulfilled, the trial court still erred as a matter of law when it held that no such evidence was offered.

{¶ 12} Because the assignments of error each concern the statutory requirements and whether appellant demonstrated evidence to satisfy those requirements, we address the assignments of error together.

### III. Analysis

{¶ 13} "[A]t common law, grandparents had no legal rights of access to their grandchildren." *In re Martin,* 68 Ohio St.3d 250, 252, 626 N.E.2d 82 (1994), citing *In re Whitaker* (1988), 36 Ohio St.3d 213, 214, 522 N.E.2d 563 (1988); *see also Troxel v. Granville,* 530 U.S. 57, 65-69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). There is also no constitutional right of association with grandchildren. *Id.,* citing *In re Schmidt,* 25 Ohio St.3d 331, 336, 496 N.E.2d 952 (1986). In Ohio, grandparent visitation rights "must be provided for by statute[.]" *Id.*

{¶ 14} The General Assembly has provided relatives with visitation rights in limited situations: (1) R.C. 3109.051(B), in divorce, dissolution, separation, or annulment proceedings; (2) R.C. 3109.11, where the parent of the child is deceased; and (3) R.C. 3109.12, where the child is born to an unmarried mother and the father has acknowledged paternity or paternity has been determined in an action under R.C. Chapter 3111. *In re K.M.-B.,* 2015-Ohio-4626, 48 N.E.3d 998, ¶ 21 (6th Dist.); *In re Martin* at 252 (citation

6.

omitted.). "These statutes allow a relative visitation in these limited situations because the precipitating, disruptive event might give rise to a situation where a parent would deprive an estranged relative of a continued relationship with the child." *In re K.M.-B.* at ¶ 21, citing *In re Gibson*, 61 Ohio St.3d 168, 169, 573 N.E.2d 1074 (1991), citing *In re Whitaker* at 215.[1]

{¶ 15} Appellant sought visitation pursuant to R.C. 3109.12. That statute permits a paternal grandparent complaint for visitation "if the father of the child has acknowledged the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child[.]" The trial court determined that appellant failed to satisfy the predicate requirement of paternity under R.C. 2151.232 or R.C. 3111.25, 3111.821, or under R.C. Chapter 3111.

{¶ 16} We ordinarily review a decision to grant or deny a nonparent's motion for visitation time for an abuse of discretion. *In re K.M.-B.*at ¶ 45, citing *Booth v. Booth,* 44 Ohio St.3d 142, 541 N.E.2d 1029 (1989) (additional citation omitted); *see also In re N.S.,*

---

[1] In *In re K.M.-B.,* we found R.C. 3109.12 unconstitutional as applied to a maternal grandmother's complaint for visitation regarding a child born to unmarried parents who married shortly after the birth. In differentiating between unmarried parents and subsequently married parents, we found "there was no significant disruptive event which justified the state's interference with the parents' autonomy interests. Although the child was born to an unwed mother, she cohabitated with the father of the child and the parents were married shortly after the child's birth. Furthermore, the grandmother did not assume any parental-like duties as a result of the marital status of the parents. Therefore, we find the statute is unconstitutional as applied to this case." *In re K.M-B,* 2015-Ohio-4626, 48 N.E.3d 998, ¶ 40 (6th Dist.). That finding has no bearing on the issues raised in this case.

7.

1st Dist. Hamilton No. C-220066, 2022-Ohio-3988, ¶ 23, citing *In re Flynn*, 10th Dist. Franklin No. 20AP-506, 2021-Ohio-4456, ¶ 15; *In re A.B*., 12th Dist. Butler No. CA2015-06-104, 2016-Ohio-2891, ¶ 39. An abuse of discretion indicates more than an error of law or judgment and implies the trial court's decision was unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 17} Here, however, the trial court dismissed the petition for visitation for want of standing. Standing involves entitlement for a determination of the merits of the complaint. Whether the facts establish standing is a question of law, subject to de novo review. *In re A.G.,* 2020-Ohio-2762, 154 N.E.3d 439, ¶ 13 (6th Dist.), citing *Moore v. Middletown,* 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20; *see also Reeves v. Tait,* 4th Dist. Washington No. 20CA38, 2022-Ohio-393, ¶ 9 (citation omitted).

{¶ 18} "Ohio nonparental-visitation statutes limit the parties who can petition the court for visitation and limit the application of the statutes to cases where there is a specified predicate event or condition. * * * R.C. 3109.12 applies only when a child is born to an unmarried woman and limits the persons who can petition for nonparental visitation to the parents and relatives of the unmarried mother and to the father and his parents or relatives, *if the father has legally acknowledged paternity or a court has declared him to be the father*." (Emphasis added.) *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 41; *see also Cassidy v. Wagner,* 12th Dist. Brown

8.

No. 2011-Ohio-5868, ¶ 8 (complaint for visitation regarding granddaughter, for whom a paternity action remained pending, was correctly dismissed for lack of standing).

{¶ 19} We find the trial court correctly addressed whether appellant demonstrated a right to seek visitation under R.C. 3109.12(A), based on evidence that the father of the children "legally acknowledged paternity or a court [] declared him to be the father." *Harrold* at ¶ 41. "[U]nder the plain language of R.C. 3109.12, [appellant is] not qualified even to seek any court-ordered right to visit their putative biological grandchild, until the alleged paternity of the grandchild is established under either of the methods set forth in the statute." *In re Martin,* 68 Ohio St.3d at 253, 626 N.E.2d 82.

{¶ 20} In challenging the trial court's decision, finding a failure to satisfy the prerequisite for standing, appellant argues that she need only demonstrate she is a relative, the same as the maternal grandmother, to seek visitation under R.C. 3109.12(A). Appellant argues that imposing additional prerequisites for paternal grandparents results in unfair treatment for paternal relatives.

{¶ 21} The statute permits the "parents of the woman and any relative" to file a complaint for companionship or visitation, without any requirement of establishing parentage of the unmarried mother. This language has been interpreted broadly for maternal relatives. In *McFall v. Watson,* a stepfather sought visitation as a relative of the mother, who was unmarried at the time of the child's birth. The child was born to Iva McFaul and Craig Watson. After Iva became unable to care for the child, the child was placed with her paternal grandparents. Iva's husband, Thomas McFall, filed a complaint

for visitation as mother's relative, pursuant to R.C. 3109.12(A).  The trial court dismissed his complaint for lack of standing.  *McFall,* 4th Dist. Vinton No. 03CA667, 2008-Ohio-5205, ¶ 2-6.  In finding Thomas McFall had standing under R.C. 3109.12(A), the Fourth District noted that a spouse is a relative by affinity, by virtue of marriage.  *McFall* at ¶ 17.  The trial court reversed and remanded the matter for consideration of the petition.  *Id.*

{¶ 22} In contrast to maternal relatives, R.C. 3109.11(A) provides conditions that must be satisfied for the father, prior to visitation for the father or his relatives.  Appellant does not point to any ambiguity in the statute, instead arguing the fairness of the prerequisites included in the statute.  Based on its plain language, R.C. 3109.11(A) *does* include a requirement for paternal relatives, not also included for maternal relatives.  While this may seem unfair, the court may only apply the statute as written.  *See, e.g., Toledo v. Corr. Commission of Northwest Ohio,* 2017-Ohio-9149, 103 N.E.3d 209 (6th Dist.), ¶ 42, citing *Jacobson v. Kaforey,* 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8 ("If the language of a statute is plain and unambiguous a court must apply, not interpret, that statute.").  Thus, to the extent appellant argues she should be treated equally as a maternal grandparent, her argument is contrary to the prerequisites for standing under R.C. 3109.12(A).

{¶ 23} Appellant next argues that any failure of the father to take responsibility by legally acknowledging parentage should not be imputed to her, preventing visitation.  In support, she compares the provisions under R.C. 3109.11 and 3109.12, arguing that R.C.

10.

3109.11 would permit visitation after father's death without any proof of parentage, but R.C. 3109.12 does not, again arguing that R.C. 3109.12 treats the maternal and paternal grandparents unequally. We note, however, that the biological process itself identifies the mother, while the identity of the father requires something more than the event of childbirth. Furthermore, the statute specifies the type of proof necessary to prove legal paternity, and we must apply the law as written. In the absence of the type of proof required by R.C. 3109.12(A), C.H. is, at best, the putative father identified at trial.

{¶ 24} In *In re Martin,* 68 Ohio St.3d 250, 626 N.E.2d 82, the Ohio Supreme Court noted that natural grandparents had no visitation rights until the natural father complied with the statutory legal process set forth at R.C. 3109.12(A). The Court noted:

> Appellees presented no evidence that the paternity of Karissa had been established pursuant to the above-emphasized language. Therefore, appellees' son is legally nothing more than the putative father of Karissa. Consequently, under the plain language of R.C. 3109.12, the appellees are not qualified even to seek any court-ordered right to visit their putative biological grandchild, until the alleged paternity of the grandchild is established under either of the methods set forth in the statute. Therefore, the court of appeals below erred in excusing compliance with R.C. 3109.12 in its reversal of the judgment of the trial court.

*In re Martin* at 253.[2]

{¶ 25} Finally, appellant argues she satisfied the predicate requirement of demonstrating legal paternity, and therefore satisfied R.C. 3109.12(A). However, the only evidence that grandmother offered was an unauthenticated court order from 2018, adopting an agreed child support order for two of the three children, as produced by the custodian of records for the county child support agency. Appellant fails to reference any of the statutes, listed under R.C. 3109.12(A), that the documents or testimony satisfied. Instead, appellant relies on the argument that the parties never disputed that C.H. is the father, and therefore, the testimony and child support documents demonstrate the prerequisites to seek visitation based on the lack of dispute. In other words, appellant appears to argue that the parties' assumption of paternity demonstrated legal paternity.

{¶ 26} Considering the record, appellant failed to pursue the issue of a *legal* acknowledgment or *legal* paternity during trial. R.C. 3109.12(A), clearly requires demonstration of legal acknowledgment or legal paternity as provided by specific statutes, and the parties' belief or attitude toward paternity, moreover, does not substitute for the statutory prerequisites. While appellant argues that the general knowledge of the parties should suffice, knowledge of paternity and legal paternity may have different legal meanings. For example, despite knowledge that a man is not the biological father,

---

[2] In *In re Martin,* the Ohio Supreme Court noted the parties did not question the paternity of the child, and addressed the merits, assuming, *arguendo,* that the paternity had been established.

12.

the law might still authorize a complaint for visitation as a legal father under R.C. 3109.12.

{¶ 27} In *Waszkowski v. Lyons*, 11th Dist. Lake No. L-2008-L-077, 2009-Ohio-403, a father sought visitation under R.C. 3109.12(A). While not the biological father, as proven by subsequent genetic testing, he had filed an affidavit acknowledging paternity. Despite the genetic test results, the court determined he satisfied the requirements of paternity under R.C. 3109.12(A). *Waszkowski* at ¶ 25. R.C. 3109.12(A) permitted a complaint for visitation based on a legal acknowledgment, with no regard for the parties' actual knowledge regarding paternity.

{¶ 28} In this case, we must apply the plain language of the statute without regard for any belief or agreement regarding paternity. Here, appellant failed to proffer evidence that established legal paternity, based on the listed statutes. R.C. 3109.12(A) requires "the alleged paternity of the grandchild [to be] established under either of the methods set forth in the statute" prior to any consideration of a court-ordered right to visitation. *In re Martin* at 253. Lacking evidence of this prerequisite, the trial court could not consider the merits of appellant's complaint. We therefore find appellant's first and second assignments of error not well-taken.

{¶ 29} As an additional matter, we note the trial court found a lack of standing under the statute, precluding review of the merits of appellant's complaint for visitation, but also determined the complaint was dismissed "on the merits, with prejudice." A dismissal based on a lack of standing is "not an adjudication on the merits[.] *Fed. Home*

13.

*Loan Mort. Corp., v. Schwartzwald,* 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 40. Therefore, dismissal should have been without prejudice, lacking any authority for the trial court to impose the harsh sanction of a dismissal with prejudice. *See, e.g., Torsok v. Wesson,* 6th Dist. Lucas No. L-98-1421, 1999 WL 576029 (Aug. 6, 1999) ("A court, while having the inherent authority to control proceedings before it, cannot dismiss a case with prejudice absent some authority to do so.").

{¶ 30} We find nothing within R.C. 3109.12(A) that precludes a subsequent petition where the first complaint was dismissed for want of standing. Instead, we find courts have considered a second complaint for visitation under R.C. 3109.12. *See, e.g., Celek v. Celek,* 1st Dist. Hamilton No. C-081117, 2009-Ohio-4990, ¶ 2-4 (first complaint dismissed for want of standing, second complaint considered after paternity was determined in the courts). Because the trial court dismissed for want of standing and did not consider the merits, the dismissal should have been without prejudice. Accordingly, while we find appellant's assigned errors not well-taken, we modify the decision of the trial court to reflect a dismissal without prejudice, consistent with the law.

## IV. Conclusion

{¶ 31} We affirm the judgment of the Ottawa County Common Pleas Court, Juvenile Division, in part, and modify the decision of the trial court from a dismissal with prejudice to a dismissal without prejudice. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Gene A. Zmuda, J.

Candace C. Crouse, V.J.

Pierre H. Bergeron, V.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE


Judge Candace C. Crouse, and Judge Pierre H. Bergeron, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.