[Cite as *M.H. v. B.K.*, 2022-Ohio-4777.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [M.H.], | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 21AP-493 |
| v. | : | (C.P.C. No. 19JU-4797) |
| [B.K.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2022

**On brief**: *Haynes Kessler Myers & Postalakis*, and *Jacqueline Baumann*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

McGRATH, J.

{¶ 1} This is an appeal by defendant-appellant, B.K. ("B.K." or "appellant"), from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling appellant's objections to a magistrate's decision and granting companionship time to E.H., the paternal grandparent of S.K., a minor child.

{¶ 2} On July 4, 2019, plaintiff-appellee, M.H. ("M.H." or "appellee"), filed a pro se complaint seeking to establish paternity, pursuant to R.C. 3111.38, regarding a minor born "in February or March 2018." (Compl. at 1.) On August 12, 2019, E.H. filed a pro se motion seeking to add herself as a party "on the grounds that I am subject to permissive joinder" under Civ.R. 20. On October 21, 2019, a magistrate of the trial court filed an order for genetic testing with respect to appellant, appellee, and the minor (S.K.).

{¶ 3} On December 18, 2019, E.H. filed a motion to add new party, as well as a motion to set visitation schedule. On January 3, 2020, appellee filed a motion for parenting

time.  Appellee also filed an affidavit requesting, in the event it is determined he is the father of S.K., that the court issue an order establishing grandmother rights of his mother (E.H.), and permitting appellee, through his mother, visitation rights while he is incarcerated.

{¶ 4}   On February 6, 2020, a magistrate conducted a hearing on the matter.  On March 26, 2020, the magistrate issued a decision, finding in part that appellee "is the biological Father of the minor child [S.K.] born 02/07/2018."  (Mar. 26, 2020 Mag. Decision at 2.)

{¶ 5}   On July 31, 2020, the magistrate conducted a hearing to consider the motions of E.H., filed August 12 and December 18, 2019, as well as the motion of appellee filed January 3, 2020. During the hearing, the magistrate heard the testimony of appellant, appellee, E.H., and M.N.H., the sister of appellee.

{¶ 6}   On March 8, 2021, the magistrate issued a decision which included the following findings.  E.H. is "seeking companionship time with her grandchild as her son [i.e., appellee, the father of the child] is in jail until approximately 2023." Appellee "is seeking to set a parenting time schedule with his daughter."  Appellant "testified that she does not wish for her child to form a relationship with paternal grandmother and [appellant] will not bring the child to visit Father at this time." (Mar. 8, 2021 Mag. Decision at 1.)

{¶ 7}   Appellee testified he is currently "serving time" for a crime he committed years ago "involving a child but that he is not getting into trouble during his incarceration; that he wants his child to get to know his family and hopefully him someday; [and] that there is a process at the prison where he is serving his time that his daughter would be able to visit." (Mar. 8, 2021 Mag. Decision at 1-2.)  Appellee further testified "he would like to get to know his daughter before he is released so that when he is released and seeks a more formal parenting time schedule, she will know who he is and they will have already formed some kind of bond." (Mar. 8, 2021 Mag. Decision at 2.)

{¶ 8}   M.N.H. "is the sister of Father and the paternal aunt of the child."  M.N.H. testified that "she knew [appellant] before [appellee] went to prison and has tried to give gifts to [appellant] for the child and tried to apologize to [appellant] for the negative history of the past." M.N.H. further testified "she could be a potential supervisor to [E.H.'s] parenting time as [she] indicated that [E.H.] suffers from epilepsy so there is a risk that

[E.H.] could suffer a seizure while caring for the minor child." M.N.H. "is employed from 8:00 a.m. – 4:30 p.m. Monday through Friday but could be available in the evenings or some weekends to help with visitations between [E.H.] and the minor child if the Court were to order companionship time." (Mar. 8, 2021 Mag. Decision at 2.)

{¶ 9} E.H. "testified that she very much wants to be a part of her granddaughter's life and that she would like for her granddaughter to form a bond with her and the child's paternal family." E.H. testified she would "visit with the minor child at any time and under any circumstances, but that she only wants to begin having a relationship with the child." On cross-examination, E.H. "indicated that she suffers from depression but that she would not hurt herself as she has too much to live for and * * * she is currently being treated for her depression symptoms." The child is her "only grandchild." (Mar. 8, 2021 Mag. Decision at 2.)

{¶ 10} Appellant testified "she believes [E.H.] is a habitual pot smoker and does not believe that it is in her child's best interest to have any relationship" with either E.H. or appellee at this time. On cross-examination, appellant testified she has a child from another relationship who is older than S.K. Appellant "does not have custody of that child but rather exercises an alternate weekend schedule for parenting time and approximately one half of the holidays." Appellant testified "she does not educate [S.K.] about the African American culture through books or movies, etc." (Mar. 8, 2021 Mag. Decision at 3.)

{¶ 11} Based on the evidence presented, the magistrate issued orders granting E.H.'s motions to be added as a party, and to set visitation, and denied appellee's motion to set visitation. The magistrate further ordered that appellant "is designated the sole residential parent and legal custodian of [S.K.]," and E.H. "shall have companionship time with [S.K.] [e]very third Sunday of the month from 1:00 p.m. until 5:00 p.m." The order also provided that "[a]t the time [E.H.] turns four years old or as [appellant] will agree the child shall begin to spend overnights with [E.H.] from Saturday at 6:00 p.m. until Sunday at 1:00 p.m. on the third weekend of the month." (Mar. 8, 2021 Mag. Decision at 4.)

{¶ 12} On April 9, 2021, appellant filed objections to the magistrate's decision. On July 1, 2021, the trial court conducted a hearing on the objections. By decision and entry filed August 31, 2021, the trial court overruled appellant's objections and adopted the decision of the magistrate.

**{¶ 13}** On appeal, appellant sets forth the following four assignments of error for this court's review:

> [I.] The lower court in its August 31, 2021 Judgment Entry erred and abused its discretion in upholding the Magistrate's decision granting Court Ordered grandparent visitation.
>
> [II.] The lower court in its August 31, 2021 Judgment Entry erred and abused its discretion in upholding the Magistrate's Decision granting paternal grandmother's motion to be added as a party to the case.
>
> [III.] The lower court in its August 31, 2021 Judgment Entry erred and abused its discretion in upholding the Magistrate's Decision granting Court Ordered grandparent visitation without limitations or restrictions on the child having contact with father.
>
> [IV.] The lower court in its August 31, 2021 Judgment Entry erred and abused its discretion in upholding the Magistrate's Decision ordering the notices under R.C. 3109.051 and 3319.321 should be unmodified and are in the best interests of the child.

**{¶ 14}** Under these assignments of error, appellant asserts the trial court erred in: (1) granting grandparent visitation to E.H., (2) adding E.H. as a party, (3) failing to place limitations and/or restrictions on the child having contact with appellee and (4) ordering that statutory notices be unmodified as in the best interest of the child.

**{¶ 15}** In considering a trial court's decision to "grant or deny a nonparent's motion for visitation/companionship," this court's standard of review "is 'abuse of discretion.' " *In re Flynn*, 10th Dist. No. 20AP-506, 2021-Ohio-4456, ¶ 15, quoting *In re A.B.*, 12th Dist. No. CA2015-06-104, 2016-Ohio-2891, ¶ 39. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary, or unconscionable. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, ¶ 12; *State v. Beavers*, 10th Dist. No. 11AP-1064, 2012-Ohio-3654, ¶ 8. However, even under an abuse of discretion standard, no court is authorized, within its discretion, to commit an error of law. *Badescu v. Badescu*, 10th Dist. No. 18AP-947, 2020-Ohio-4312, ¶ 9. Thus, a court abuses its discretion when its ruling is based on an error of law or a misapplication of law to the facts. *Id*. While a reviewing court "will not reverse a 'decision regarding visitation rights * * *

except upon a finding of an abuse of discretion[,]' * * * [f]actual findings by the trial court * * * are reviewed 'under a manifest weight of the evidence standard.' " *Jenkins v. Jenkins*, 9th Dist. No. 18CA011414, 2019-Ohio-4909, ¶ 13, quoting *Loewen v. Newsome*, 9th Dist. No. 28107, 2018-Ohio-73, ¶ 15.

{¶ 16} R.C. 3109.051(D) sets forth "the factors that a trial court shall consider in determining visitation rights to a grandparent." *Doughty v. Doughty*, 5th Dist. No. 18 CAF 05 0040, 2019-Ohio-974, ¶ 44. R.C. 3109.051(D) states as follows:

> In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:
>
> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
>
> (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
>
> (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
>
> (4) The age of the child;
>
> (5) The child's adjustment to home, school, and community;
>
> (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the

grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the

commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 17} We initially consider appellant's second assignment of error, in which appellant asserts the trial court abused its discretion in granting E.H.'s motion to be added as a party.

{¶ 18} R.C. 3109.12 provides for parenting time, companionship or visitation rights where the mother is unmarried. R.C. 3109.12(A) states in part that "the parents of the father * * * may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child."

{¶ 19} In the present case, E.H., pursuant to Civ.R. 20, filed motions to be added as a party on August 12 and December 18, 2019, respectively. In an entry dated March 26, 2020, the magistrate acknowledged that the purported father (M.H.), mother (B.K.), and minor child (S.K.) submitted to genetic testing. The magistrate found, in part, that appellee "is the biological Father of the minor child [S.K.]." (Mar. 26, 2020 Mag. Decision at 2.)

{¶ 20} The legislature "has authorized grandparent visitation in three situations," including "where the child is born to an unmarried mother, and the father * * * has been determined to be the child's father in an action brought under R.C. Chapter 3111 (R.C. 3109.12[A])." *In re Martin*, 68 Ohio St.3d 250, 253 (1994). Based on evidence that the paternity of the child had been established, E.H., as a parent of father (M.H.), was qualified to seek visitation rights of a biological grandchild under R.C. 3109.12. Accordingly, the trial court, within its discretion, could add E.H. as a party. Upon review, we find no abuse of

discretion by the trial court in adding E.H. as a new party to the case. Appellant's second assignment of error is not well-taken and is overruled.

{¶ 21} We next consider appellant's first assignment of error, in which she challenges the trial court's decision adopting the magistrate's determination that grandparent visitation was in the child's best interest. We begin with a recitation of the evidence adduced at the hearing before the magistrate on July 31, 2020.

{¶ 22} During 2013, appellee was involved in a relationship with a woman, not appellant, who had a two-year old child; they lived together and were involved in a family and/or household relationship. On or about September 22, 2013, appellee did knowingly cause that two-year-old child serious physical harm. Appellee acknowledged that he initially denied any involvement with the injuries to the child, stating that: "When questioned at the hospital, I pretty much lied about everything." An investigation of the incident was initiated, and official interviews were conducted with the mother, appellee, family members, and doctors. Questions remained unanswered, and no arrests were made during that time period. Appellee testified: "I lied about everything. I lied to the sheriff. They questioned me. The nurses at the hospital. I lied to my ex, and conclusion, I was not brought on any charges. I was not arrested." Appellee stated that "all three of us lived together," and the relationship "continued * * * for a couple years more, and then we broke up." (Tr. at 16.)

{¶ 23} Several years later, appellee applied for a job as a police officer in Las Vegas. During the application process, he was "questioned about a situation between my ex-girlfriend and her child," and appellee recounted: "[P]retty much, I told on myself and just wrote it all out." (Tr. at 16-17.) The Las Vegas police contacted the Columbus Ohio Police Department, and charges of felonious assault and child endangering were subsequently filed against appellee.

{¶ 24} When questioned during the hearing before the magistrate on cross-examination as to how the child was injured, appellee explained: "[M]e and my ex-girlfriend [not appellant] got into it, arguing, fighting. * * * The young man [the two-year old] was crying. * * * Play fighting escalated with him, and then he got injured. Appellee stated that "[t]he horseplay went too far, and again, I lifted him up out of his crib." (Tr. at 18.) According to appellee, "I didn't drop him. I simply was horseplaying with him. I took

it too far when I picked him up." Appellee stated that"[i]nstead of treating him like he was a two year old, I was horseplaying with him like he was a 22 year old." (Tr. at 19.)  Appellee "lied to everyone."  (Tr. at 22.)

{¶ 25}  During the incident, the two-year-old child suffered a broken eye socket and a broken leg.  Appellee acknowledged the child was injured "[b]y my actions, by what I did." (Tr. at 17.)

{¶ 26}  On February 20, 2018, appellee entered a guilty plea to felonious assault, carrying a possible prison range from two to eight years.  On May 25, 2018, the trial court, recognizing the seriousness of the offense, the age of the child injured, the injuries to the child and the relationship had with the child and the child's mother, sentenced appellee to six years' incarceration.

{¶ 27}  E.H. (the mother of M.H.) testified that she was married for a number of years and her husband developed health issues; E.H. was able to donate one of her kidneys to him, but he subsequently passed away.  E.H. became severely depressed and attempted to take her own life.  A few months later, E.H. threatened suicide while in possession of a firearm.  This second attempt occurred in either late 2019 or early 2020 (testimony in the instant case was taken in July 2020).  E.H. was placed "in a facility for treatment for rehabilitation * * * for five days." (Tr. at 61.)  E.H. testified she was not currently involved in counseling; further, while she was prescribed Zoloft for a period of time for her depression, she was not currently taking that medication.

{¶ 28}  E.H. also suffers from epilepsy, causing her to suddenly lose consciousness and convulse (grand mal seizures).  The disease has been a life-long struggle, and she takes medication to attempt to control/limit the seizures.  However, due to the nature of the disease, the timing, frequency, and severity of the seizures cannot be predicted.  She is not permitted to drive, and E.H. acknowledged (on cross-examination) that if she had a seizure there would be no one there to care for the child.  Due to that concern, E.H. testified she would prefer to have someone else there with her and the child, even suggesting that appellant could be present to ease the situation.

{¶ 29}  M.N.H. (sister of appellee) testified that she knew appellant through the relationship appellant had with her brother.  Appellant and M.N.H. did not always have a good relationship.  M.N.H. acknowledged that she threatened appellant through a text

conversation and has "attempted to apologize [to appellant] for that." (Tr. at 35.) M.N.H. testified that E.H. has epilepsy with grand mal seizures. The seizures are "as controlled as they can be with that type of disease. They don't go away." (Tr. at 37.) M.N.H. also testified that, since her father died, her mother has "experienced some sadness and depression and grief." (Tr. at 38.) M.N.H. indicated that her mother's mental health has improved in the past year; however, E.H. has threatened to kill herself while in possession of a gun, and there was one prior attempt at suicide before the most recent incident with the firearm.

{¶ 30} Appellant testified during the hearing that she and appellee started a relationship in late 2016, early 2017. During the relationship, appellant learned about the allegations made by appellee's ex-girlfriend concerning injuries to the two-year-old child, and appellant asked him about it multiple times. Appellee denied any wrongdoing and subsequently went to Las Vegas to try to obtain a job as a police officer. Appellant recounted that "[appellee] even admitted it in a police station while on a job interview and still thought he wasn't going to go to prison." (Tr. at 77.) On March 15, 2017, appellee was indicted for felonious assault, and two counts of endangering children.

{¶ 31} Based in part on appellee's denial of the alleged offense, appellant was with him through a part of the court process and continued to have a relationship with him. While out on bond, appellee took appellant to the Bahamas and even proposed to appellant. During a period of time in which appellant was involved in a custody dispute with the father of her other daughter, appellee was staying with appellant, and appellee's indictment was used against appellant in that custody case. In 2017, appellant became pregnant. Appellee, still unsure if he was the father, sent a text message to appellant threatening to kill her if she got an abortion. Appellant stopped talking with appellee while she was pregnant (around October 2017), and the child was born February 7, 2018.

{¶ 32} When asked if she believed it was in her child's best interest to have visitation with appellee, appellant responded: "I do not. He is violent. He's violent toward young children. * * * He won't acknowledge what he did." Noting the "resulting injuries" to the child involved "a broken eye socket, as well as a broken leg," appellant stated she "questioned him multiple times about it. He denied it." (Tr. at 77.) Appellee's past denials of any wrongdoing, now coupled with his statements, admission, and guilty plea, caused appellant to become concerned for her and her family's safety.

{¶ 33} During the time appellant and appellee were in a relationship, appellant had contact with his family, including E.H. and M.N.H. Appellant testified that she would "have a couple arguments" with appellee, and that E.H. and M.N.H. "would tell him to break up with me. Trying to get him to date other women, saying that he should date black women." At the end of her relationship with appellee, appellant did argue with M.N.H., and M.N.H. "did threaten my life and my children's life. That was pretty much the end of that." (Tr. at 75.) Appellant watched E.H. and her husband smoke marijuana (although E.H. denied any recent use), and appellant indicated she did not want her child around that type of environment.

{¶ 34} During the hearing, appellee, who was not represented by counsel, was permitted to question appellant on cross-examination. In response to an inquiry by appellee as to "why wouldn't you feel safe being with my mother and your daughter in her presence, and sister," appellant responded: "[Y]our sister has threatened my life and my children's lives." (Tr. at 102.) When asked "what are you exactly protecting her from," appellant answered: "I am protecting her from you. You are a convicted felon, convicted of felonious assault against a minor." (Tr. at 93-94.) Appellant further stated: "You are dangerous. Your sister has threatened me, and your mom supports you and your sister. I don't think it's a very good family dynamic, and my daughter does not need to be around that at all." (Tr. at 93.)

{¶ 35} Appellee stated during the hearing that, although he has "not had any interaction with [the child and] [m]y family has not had any interaction with [the child]," he wants S.K. brought to the prison after covid for visitations, and he did not "really see a problem with it." (Tr. at 94, 13.) E.H. also indicated she wanted to bring the child to the prison to visit appellee.

{¶ 36} As indicated, appellant challenges the trial court's adoption of the magistrate's decision to grant E.H.'s request for grandparent visitation. Appellant asserts it is not in the child's best interest to visit appellee at the Ohio Department of Rehabilitation and Correction facility (Noble Correctional Institution) where he is currently incarcerated. Appellant further argues it is not in the child's best interest to be left unsupervised during visits with appellee's family, especially in light of concerns regarding E.H.'s mental and

physical health, including depression and suicidal thoughts/attempts, and the fact there is no prior relationship with E.H. and S.K.

{¶ 37} We note, at the outset, appellee was not granted visitation, and that appellant was designated the sole residential parent and legal custodian of S.K. Further, those determinations are not being challenged on appeal.

{¶ 38} Courts have recognized the "well-established" principle that "a parent has a fundamental right to make decisions regarding the care, custody, and control of [his or] her children." *A.B.* at ¶ 39, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000). In "contrast, grandparents and other nonparent relatives have no constitutional right of association with the children." *Id.*, citing *Martin* at 252. Accordingly, "[g]randparents and other nonparent relatives * * * may only be granted visitation rights as provided by statute." *Id.*, citing *Martin* at 252.

{¶ 39} Under R.C. 3109.12(A), "the parents of the father * * * may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child." Further, "[t]he court may grant the * * * companionship or visitation rights requested under [R.C. 3109.12(A)] * * * if it determines that the granting of [those] rights [are] in the best interest of the child." R.C. 3109.12(B). *See also In re N.C.W.*, 12th Dist. No. CA2013-12-229, 2014-Ohio-3381, ¶ 20. In making such determination, "the court shall consider all relevant factors, including, but not limited to, the factors set forth in [R.C. 3109.051(D)]." R.C. 3109.12(B). R.C. 3109.051(D) sets forth "sixteen factors which should be considered when determining whether a visitation schedule is in the child's best interest." *Harrold v. Collier*, 9th Dist. No. 06CA0010, 2006-Ohio-5634, ¶ 7.

{¶ 40} There exists a presumption that "fit parents determine the best interests of their children," and therefore the burden of proving that the best interest of the child "warrants nonparent visitation rests with the nonparent." *In re K.M.-B.*, 6th Dist. No. L-15-1037n, 2015-Ohio-4626, ¶ 43, citing *N.C.W.* at ¶ 25-26. *See also In re P.R.P.*, 12th Dist. No. CA2017-02-026, 2018-Ohio-216, ¶ 18 ("Because parents have a fundamental right to raise their child and certain relatives only have a statutory right to visitation, the nonparent has the burden of proving that visitation is in the child's best interest.").

{¶ 41} Ohio appellate courts have recognized that the factor under R.C. 3109.051(D)(15) "is of 'particular importance' because of the United States Supreme Court's

ruling in *Troxel*." *P.R.P.* at ¶ 20, quoting *A.B.* at ¶ 41. The court in *P.R.P.* noted that in *Troxel*, the United States Supreme Court "held — with respect to a Washington state nonparent visitation statute — that a fit parent's decision with respect to nonparent visitation must be accorded []some 'special weight.' " *Id.*, quoting *Troxel* at 70.

{¶ 42} The Supreme Court of Ohio has extended the rationale in *Troxel* "to Ohio's nonparent visitation statutes." *P.R.P.* at ¶ 20, citing *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, paragraph one of the syllabus. Specifically, the Supreme Court "held that 'Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation.' " *Id.*, quoting *Collier* at ¶ 12. In *Collier*, the Supreme Court noted, "[i]n fact," that special weight "is required by R.C. 3109.051(D)(15) since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making its 'best interest of the child' evaluation." *Id.* at ¶ 43. Further, while "[n]either the United States Supreme Court nor the Ohio Supreme Court have defined the precise meaning of 'some special weight,' * * * the Ohio Supreme Court used the phrase 'due deference' in describing the concept." *P.R.P.* at ¶ 20, quoting *Collier* at ¶ 45.

{¶ 43} In the present case, appellant contends the trial court erred in failing to afford special weight to her concerns, and the court failed to consider numerous areas of concern that were either overlooked or not adequately addressed. Based on this court's review of the record, we agree with appellant that the trial court abused its discretion in determining grandparent visitation.

{¶ 44} We note, initially, there is no contention appellant is an unfit parent, and therefore the trial court should have afforded some special weight and deference to her wishes. *See K.M.-B.* at ¶ 43 ("A presumption exists that fit parents determine the best interests of their children" and "[t]herefore, absent allegations of unfitness, the court must give special weight to the wishes of the parent."). The trial court, however, appeared to discount appellant's wishes, finding that "the crux of the matter is that [appellant] has placed her own wishes over the best interests of her minor child." (Aug. 31, 2021 Decision at 6.) Further, while the trial court's decision does not directly address the issue of parental

fitness with respect to appellee,[1] the court arguably placed at least equal (or greater) weight on the testimony of appellee, E.H., and M.N.H., indicating that they wished to "know the minor child and to love her." (Aug. 31, 2021 Decision at 7.) However, the fact that a grandparent desires a child to know the " 'other side' " of the family is not "compelling" enough of a reason "to interfere with [a parent's] right to control who does and does not come into contact with her [or his] child." *Oliver v. Feldner*, 149 Ohio App.3d 114, 2002-Ohio-3209, ¶ 66-67 (7th Dist.). Here, the trial court did not indicate in its decision why the grandparent's desire to know the minor child outweighed the special weight afforded to the mother's wishes.

{¶ 45} Furthermore, as reflected in the recitation of the hearing testimony, appellant presented evidence as to her concerns regarding the health and safety of the child as well as other statutory factors. Those concerns included appellee's prior history of violence with a child the same age as S.K., the fact E.H. had suffered depression and suicidal ideations and attempts, prior marijuana usage by E.H., the fact E.H. suffered from epilepsy, past threats and conflict between appellant and M.N.H., and the fact S.K. has never spent time before with E.H. (nor appellee). The hearing evidence also revealed E.H. was in favor of S.K. having visitations with appellee in prison. The record evidence indicates that appellant's concerns were legitimate, and the decision of the trial court does not reflect the court gave those concerns "special weight." *See In re Kaiser*, 7th Dist. No. 04 CO 9, 2004-Ohio-7208, ¶ 19, citing *Oliver* at ¶ 68, 70 ("trial court should not have discredited the mother's safety and health concerns without giving them special weight").

{¶ 46} A trial court may not presume visitation with a grandparent is in the best interest of the child. Rather, the burden is on the grandparent to prove visitation would be in the best interest of the child. *Boling v. Thacker*, 2d Dist. No. 2018-CA-109, 2019-Ohio-3683, ¶ 16. Further, a trial court may not place a burden on the mother "to prove that visitation is not in the child's best interest, rather than placing the burden correctly upon [the grandparent]." *N.C.W.* at ¶ 28.

{¶ 47} As noted, the evidence in this case indicates appellant is a fit parent and there is a presumption that a fit parent acts in the child's best interest. Accordingly, the trial court

---

[1] While the trial court noted appellee "is currently incarcerated," and that he was convicted of felonious assault of a child, the court observed "he is working on bettering himself," and he "admitted his mistakes." (Aug. 31, 2021 Decision at 8.)

should have afforded special weight or deference to appellant's wishes. Moreover, the record is not clear that the trial court properly placed the burden on E.H. to demonstrate visitation was in the best interest of the child. Because it appears the trial court failed to appropriately consider these factors, we find the trial court abused its discretion. For these reasons, we sustain appellant's first assignment of error and remand this matter to the trial court to apply the proper burden and accord the proper weight to the wishes of appellant.

{¶ 48} Under the third assignment of error, appellant contends the trial court erred in granting grandparent visitation without limitations or restrictions on the child having contact with appellee. In light of our disposition of the first assignment of error, remanding this matter for a new determination as to the issue of grandparent visitation, appellant's third assignment of error is rendered moot.

{¶ 49} Under the fourth assignment of error, appellant asserts the trial court erred in upholding the magistrate's decision ordering notices under R.C. 3109.051 and 3319.321. Appellant contends in general that, by issuing the notices, the trial court "impliedly found" it was in the best interest of the child for the notices to be unmodified.

{¶ 50} By way of background, the magistrate, in her decision: (a) granting E.H.'s motions to be added as a party, (b) designating appellant as the sole residential parent, and (c) granting companionship time to E.H., also issued the following four notices: (1) a relocation notice, (2) a records access notice, (3) a day care center access notice, and (4) a school activities notice. Appellant filed objections regarding those notices.

{¶ 51} In overruling appellant's objections, the trial court noted the decision of the magistrate "designated [appellant] as the sole residential parent and legal custodian of the minor child and denied [appellee's] *Motion to Set Visitation* and [appellee as] the non-residential parent." (Emphasis sic.) The trial court held that appellee "is still the minor child's biological and legal father and is therefore entitled to the required Notices prescribed pursuant to [R.C. 3109.051]." (Aug. 31, 2021 Decision at 9.)

{¶ 52} Appellant does not appear to dispute the trial court's determination that the notices were statutorily required. Rather, appellant argues the trial court erred in failing to issue the notices without restrictions or limitations. Upon review, however, we find no error by the trial court in its determination that the magistrate did not err in issuing the

notices as prescribed by R.C. 3109.051. Appellant's fourth assignment of error is not well-taken and is overruled.

{¶ 53} Based on the foregoing, appellant's first assignment of error is sustained, the second and fourth assignments of error are overruled, the third assignment of error is rendered moot, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this decision.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

KLATT and DORRIAN, JJ., concur.

_____