[Cite as *In re O.A.*, 2023-Ohio-1782.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN RE: :

    O.A. :

: 

:

:

:

CASE NO. CA2022-10-067

O P I N I O N
5/30/2023

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2021 JG 26515

Rollman & Conyers LLC, and Jeffrey M. Rollman, for appellant.

Cornetet, Meyer, Rush & Stapleton, and Karen P. Meyer, for appellee.

Katherine Montgomery, guardian ad litem.

**M. POWELL, J.**

{¶ 1} Appellant ("Mother") appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting companionship rights to her son's paternal grandparents ("Grandmother" and "Grandfather" respectively, and "Grandparents" collectively.)

**{¶ 2}** Mother and Father are the parents of Owen who was born in March 2018.[1] Mother and Father were never married to each other. For the first year of Owen's life, he and his parents resided with Grandparents. During that time, Grandparents provided childcare for Owen while Mother was working and assisted with Owen's day-to-day care. After Father, Mother, and Owen moved out of Grandparents' home, Grandparents continued to see Owen on weekends and often babysat him during the week.

**{¶ 3}** Father engaged in domestic violence against Mother and verbally abused her throughout their relationship. Mother confided in Grandmother multiple times about Father's domestic violence, and Grandmother witnessed Father's verbal abuse of Mother. Father has a history of inpatient and outpatient mental health interventions. At some point in time, Mother separated from Father; in October 2020, she obtained a civil protection order ("CPO") against him, effective until 2025.

**{¶ 4}** The CPO provided that Father have parenting time with Owen, supervised by Grandparents. From December 2020 until April 2021, Grandparents, either individually or together, supervised Father's alternating weekend parenting time with Owen. During this time period, Grandparents also saw Owen five days a week one week and three days the following week. Father eventually violated the CPO and was arrested and incarcerated in July 2021. Nevertheless, Grandparents continued to enjoy alternating weekend visits with Owen until August 2021, when Mother stopped communicating with Grandparents. This occurred after Grandmother sent a text to Mother stating, "[E]verything that [Father] did was awful, but you allowed it. Don't blame anyone for that but yourself." In September 2021, Mother moved to Indiana to live with a man she had met a month earlier. Thereafter, Mother did not permit Grandparents to visit with Owen.

---

1. "Owen" is a pseudonym, adopted in the opinion for purposes of privacy and readability.

{¶ 5} The record indicates that Father was in jail from July 2021 until October 2021. While incarcerated, Father regularly called Grandmother. Owen was present during some of Grandmother's telephone conversations with Father. During his jail calls, Father at times made threats to harm Mother; Grandmother informed Mother of these threats. Grandmother advised Father that Mother had moved and discussed Mother's likely whereabouts with Father. During one of the jail calls and at Father's request, Grandmother provided him with Mother's telephone number. Thereafter, Father made threatening telephone calls to Mother. Upon release from jail, Father moved into Grandparents' home.

{¶ 6} On October 29, 2021, Father filed a complaint in the juvenile court seeking custody of and parenting time with Owen. A guardian ad litem ("GAL") was appointed. On March 31, 2022, Grandmother filed a complaint for custody of Owen or, alternatively, companionship time with him. The record shows that Grandmother had Father move out of Grandparents' home prior to filing her complaint. In May 2022, Father withdrew his complaint for custody and parenting time with Owen; Grandmother then withdrew her prayer for custody, leaving her prayer for companionship time pending.

{¶ 7} A hearing was held on Grandmother's complaint for companionship time with Owen. Grandparents and Mother were present and represented by counsel; Father did not appear at the hearing. The juvenile court heard testimony from Mother, Grandmother, Grandfather, Owen's maternal grandmother, and the GAL. The juvenile court also received the GAL's report which noted the positive and loving relationship between Grandparents and Owen. In her report, the GAL recommended that Grandmother have companionship time with Owen every other weekend and FaceTime or other video conferencing when Grandmother is not exercising her companionship time. At the hearing, the GAL changed her companionship time recommendation to one weekend per month because of the two-hour driving distance between Grandparents' home and Mother's home. However, the

GAL's report had already noted that Grandparents and Mother live 100 miles apart.

{¶ 8} On October 7, 2022, the juvenile court awarded Grandparents companionship time with Owen on the first Saturday of each month from noon until Sunday at 6:00 p.m., conditioned upon their completion of a supervised parenting program and taking reasonable action to prevent any contact between Owen and Father. In granting companionship time to Grandparents, the juvenile court underlined Grandparents' "extraordinary relationship with [Owen]," and noted that Mother's sole basis for objecting to Grandparents' request for companionship time was her concern they would not be able to protect Owen from Father. The juvenile court found it was in Owen's best interest to maintain his relationship with Grandparents. The court further found it was also in Owen's best interest to be protected from Father.

{¶ 9} Mother now appeals, raising two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AWARDED COMPANIONSHIP TIME TO PATERNAL GRANDFATHER.

{¶ 12} Mother argues that the juvenile court erred in granting companionship time to Grandfather because only Grandmother filed a complaint for companionship time with Owen.

{¶ 13} "A juvenile court may exercise jurisdiction only if expressly granted the authority to do so by statute." *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, ¶ 13, citing Article IV, Section 4(B), Ohio Constitution. "Any person with standing may file a complaint for the determination of any other matter over which the juvenile court is given jurisdiction by the Revised Code." Juv.R. 10; *In re C.W.*, 9th Dist. Lorain Nos. 16CA011044, 17CA011162, and 17CA011165, 2018-Ohio-5265, ¶ 22. The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction."

Juv.R. 2(F). "The term 'jurisdiction' encompasses both subject-matter jurisdiction, i.e., the court's power to adjudicate the merits of a case, and the exercise of that jurisdiction." *Rowell* at ¶ 13. An appellate court reviews de novo a juvenile court's determination regarding its subject-matter jurisdiction—whether the juvenile court has or lacks jurisdiction in the first place—because such a determination is a matter of law. *In re S.C.R.*, 12th Dist. Clinton No. CA2017-11-018, 2018-Ohio-4063, ¶ 12.

{¶ 14} The Ohio legislature has enacted several statutes to give standing to nonparents when seeking companionship or visitation rights, to wit, R.C. 3109.11 (visitation when the child's parent has died); R.C. 3109.12 (visitation when a child is born to an unmarried woman); R.C. 3109.051(B)(1) (visitation in a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding); and R.C. 3107.15(C) (visitation with an adopted child). *In re N.C.W.*, 12th Dist. Butler No. CA2013-12-229, 2014-Ohio-3381, ¶ 24. "The Ohio nonparental-visitation statutes limit the parties who can petition the court for visitation[.]" *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 41. "Grandparents may be granted visitation rights *upon their motion* [under R.C. 3109.11, 3109.12, or 3109.051(B)(1)], when such rights are found to be in the best interest of the grandchild." (Emphasis added.) *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 9.

{¶ 15} Applicable here is R.C. 3109.12(A) which provides, in relevant part

> If a child is born to an unmarried woman and if the father of the child has acknowledged the child * * * or has been determined * * * to be the father of the child, the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and *the parents of the father* and any relative of the father *may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.*

(Emphasis added.) In turn, R.C. 3109.12(B) provides that "[t]he court may grant the parenting time rights or companionship or visitation rights *requested under division (A)* of

- 5 -

this section[.]"  (Emphasis added.)

{¶ 16} The juvenile court granted the "Complaint for Companionship Time filed herein by the Paternal Grandparents," thereby granting companionship time to both Grandmother and Grandfather.  However, only Grandmother filed a complaint for companionship time with Owen.  Grandfather did not join in Grandmother's complaint, did not otherwise move for companionship time with Owen, and did not seek to intervene in the matter.  In other words, at no point in the proceedings has Grandfather invoked the juvenile court's jurisdiction pursuant to R.C. 3109.12.  The juvenile court, therefore, did not have subject-matter jurisdiction to grant companionship time to Grandfather and clearly erred in assuming it had such jurisdiction.  *See In re C.W.*, 2018-Ohio-5265.

{¶ 17} Mother's first assignment of error is well-taken and sustained.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED BY AWARDING COMPANIONSHIP TIME TO PATERNAL GRANDMOTHER/PATERNAL GRANDPARENTS.

{¶ 20} Mother argues that the juvenile court erred in granting companionship time to Grandmother because the juvenile court failed to give special weight to Mother's wishes and concerns regarding Grandmother's companionship time with Owen.[2]

{¶ 21} An appellate court will not reverse a trial court's decision granting or denying visitation rights absent an abuse of discretion.  *King v. King*, 12th Dist. Warren No. CA2006-01-009, 2006-Ohio-5985, ¶ 8.  An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.  *Id.*

{¶ 22} A parent has a fundamental right to make decisions regarding the care,

---

2. In her second assignment of error, Mother challenges the juvenile court's grant of companionship time to both Grandmother and Grandfather.  However, in light of our holding under the first assignment of error, we will only address the juvenile court's grant of companionship time to Grandmother.

- 6 -

custody, and control of his or her own child. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054 (2000); *In re P.R.P.*, 12th Dist. Butler No. CA2017-02-026, 2018-Ohio-216, ¶ 18. Grandparents, however, have no constitutional right of association with their grandchildren. *In re Martin*, 68 Ohio St.3d 250, 252, 1994-Ohio-506. In addition, "the law does not provide grandparents with inherent legal rights based simply on the family relationship." *In re H.W.*, 2007-Ohio-2879 at ¶ 9. Instead, companionship or visitation rights for grandparents and other nonparents are only as provided by statute. *In re Martin* at 252. Because a parent has a fundamental right to parent whereas the nonparent has only a statutory right to request visitation, the nonparent has the burden to prove that visitation will be in the child's best interest. *In re P.R.P.* at ¶ 18.

{¶ 23} As applicable here, R.C. 3109.12(B) provides that a trial court may grant companionship rights to a grandparent only if it determines that such visitation is in the best interest of the child. In determining whether to grant visitation rights to a grandparent, the trial court is required to consider all relevant factors, including the 16 factors listed in R.C. 3109.051(D). As especially pertinent to this case, and pursuant to the 15th factor, a trial court must consider "the wishes and concerns of the child's parents, as expressed by them to the court." R.C. 3109.051(D)(15). "Although the trial court can consider any factors it considers relevant, consideration of the parents' wishes and concerns is mandatory." *Harrold*, 2005-Ohio-5334 at ¶ 42. This factor is of "particular importance" because of the United States Supreme Court's ruling in *Troxel*. *In re P.R.P.* at ¶ 20; *M.H. v. B.K.*, 10th Dist. Franklin No. 21AP-493, 2022-Ohio-4777, ¶ 41.

{¶ 24} Although rebuttable, there is a presumption that "fit parents act in the best interest of their children." *Troxel*, 530 U.S. at 68; *Harrold* at ¶ 44. Absent an allegation of parental unfitness, the parents' determination of their child's best interest must be afforded "special weight." *Troxel* at 69; *Harrold* at ¶ 12, 42-43 (Ohio courts are obligated to afford

some special weight to a parent's wishes when considering petitions for nonparental visitation under R.C. 3109.12).[3]  We note that there are no allegations in the record that Mother is an unfit parent.  The juvenile court observed there was no evidence suggesting that Mother was an "unfit" parent, "nor was there any evidence to give the Court concern for [Owen's] physical and mental well-being while in the care of Mother."

{¶ 25} Under Ohio's nonparental visitation statutes, a trial court "afford[s] parental decisions the requisite special weight, [and] take[s] into consideration the best interest of the child and balance[s] that interest against the parent's desires."  *Harrold*, 2005-Ohio-5334 at ¶ 43.  When determining whether it is in the best interest of the child to grant nonparental visitation, the parent's wishes and concerns must also be weighed against the other factors listed under R.C. 3109.051(D).  *Celek v. Celek*, 1st Dist. Hamilton No. C-081117, 2009-Ohio-4990, ¶ 10.  "[T]he manner in which this standard is to be applied to each case must be 'elaborated with care.'  Thus, there must be some meaningful rationale given for either abiding by or overriding the wishes of the parent."  *Id.*, citing *Troxel*, 530 U.S. at 73.

{¶ 26} Upon reviewing the record, we find that the juvenile court did not give the requisite special weight to Mother's wishes and concerns.

{¶ 27} The single overriding concern in this case is whether Grandparents will permit Father to have contact with Owen.  It is uncontroverted that Father is a violent individual, has been abusive to Mother, has threatened to harm her, and is undeterred by court orders

---

3. This court has previously used the phrases "extreme deference" and "great deference" in describing the special weight to be afforded a parent's position with respect to nonparent visitation claims.  *See In re N.C.W.*, 12th Dist. Butler No. CA2013-12-229, 2014-Ohio-3381, ¶ 38; *In re A.B.*, 12th Dist. Butler No. CA2015-06-104, 2016-Ohio-2891, ¶ 41; *In re E.T.B.*, 12th Dist. Clermont No. CA2014-07-051, 2015-Ohio-2991, ¶ 30; *In re J.T.S.*, 12th Dist. Preble No. CA2014-09-009, 2015-Ohio-364, ¶ 26.  Neither the United States Supreme Court nor the Ohio Supreme Court have defined "special weight."  As we have stated, this court no longer uses descriptive phrases for the "special weight" to be afforded a parent's wishes.  *In re P.R.P.*, 12th Dist. Butler No. CA2017-02-026, 2018-Ohio-216, ¶ 26.  "The law is clear that regardless of a parent's motivations, a court is required to give special weight to their wishes in accordance with *Troxel and Harrold.*"  *Id.*

to keep away from her. Mother testified that she continues to be fearful of Father, that she had to quit her job in Ohio because Father knew where she worked, that she moved out of Ohio without telling anybody, including her family, because Grandparents were contacting her family in their attempt to locate her and she was worried it would get back to Father, and that despite Mother's move to Indiana, Father continues to find out things about her life because Grandparents give him updates. Mother testified that before they moved to Indiana, Owen would kick, hit, bite, and punch. Eventually Mother started seeing numerous similarities between Owen's behavior and that of Father. Since the move to Indiana, Owen is doing a lot better, knows right from wrong, and is sweet and loving. The maternal grandmother likewise testified that Owen used to fight and use foul language before the move to Indiana, but that since moving to Indiana, he is more loveable and not as defensive.

{¶ 28} Testimony at the hearing shows that Mother confided in Grandmother multiple times about Father's domestic violence, that Grandmother always expressed a lot of sympathy, that Grandmother witnessed Father's verbal abuse of Mother, and that Grandmother informed Mother of the threats of harm Father made during jail calls. Testimony also shows that Grandparents have resisted and pushed back against Father on occasions. However, testimony also revealed that Grandmother informed Father that Mother had moved and discussed with him Mother's whereabouts, and that at Father's request, she gave him Mother's phone number. Grandmother's testimony indicates that Father manipulated her into giving him Mother's phone number. Grandmother also expressed her belief that with mental health treatment, Father could once again have parenting time with Owen one day.

{¶ 29} Based upon the foregoing, Mother testified she does not trust that Grandparents can keep Father away from Owen: "I'm worried that things would be let go or ignored or he'll be able to talk his way out of things[.] I feel like there's just been not a great

- 9 -

amount of accountability and I don't want [Owen] to lose his honesty and his integrity. It worries me to have him in the environment that [Father] came out of. * * * I know how well [Owen] is doing now and I don't want that to change."

{¶ 30} In granting Grandmother's motion for companionship time with Owen, the juvenile court made several findings of fact, including that "Mother is opposed to the Grandparents having companionship time, for the reason that the Father is capable of manipulating them. She is not confident that the Grandparents can 'keep the child away' from the Father." The juvenile court then considered and discussed the 16 factors in R.C. 3109.051(D) in determining whether granting companionship rights to Grandparents was in Owen's best interest. The juvenile court prefaced its consideration of the factors by noting that *Troxel* "made it abundantly clear that the [trial court] must 'apply a presumption that fit parents act in the best interest of their children.'" In addressing the 15th factor—a parent's wishes and concerns—the juvenile court acknowledged the *Troxel* requirement that special weight be given to a fit parent's decision to deny nonparental visitation, observed there was no evidence that Mother was an "unfit" parent, and stated, "As a result, the Court gives special weight and consideration to the Mother's testimony wherein she stated definitively that she was opposed to the Grandmother having a regular schedule of visitation with [Owen]."

{¶ 31} The juvenile court then proceeded to note that for a significant portion of Owen's life, Grandparents had "an extraordinary relationship with him, beyond the bounds of a traditional grandparent relationship;" Owen had lived in their home and Grandparents provided him daily care; after Owen moved out of their home, Grandparents "continued a regular and consistent schedule of visitation with him" and provided child care when Mother was working; Mother acknowledged the positive relationship Owen has with Grandparents; Mother was complimentary of the relationship she enjoyed with Grandparents; and Mother

expressed no concerns about Grandparents' love and commitment to Owen. The juvenile court noted that Mother's reason for objecting to Grandparents' request for companionship time was her concern they would not be able to protect Owen from Father. Based upon the foregoing, the juvenile court found that it was in Owen's best interest that he maintain his relationship with Grandparents, while also recognizing that it was in Owen's best interest to be protected from Father.

{¶ 32} Notwithstanding its reference to *Troxel* and acknowledgment of the "special weight" to be given to a parent's wishes and concerns, the juvenile court did not discuss Mother's wishes and concerns other than to state her opposition to Grandmother's request for companionship time with Owen, did not give special weight to those wishes and concerns, and did not explain why Mother's valid concerns were insufficient to overcome what the court considered were the other best interest factors favoring granting companionship time with Grandmother.

{¶ 33} Stated otherwise, despite the genuine and serious concerns that Mother had, the juvenile court dismissed such concerns in light of factors it determined weighed in favor of companionship time. The juvenile court's written decision does not demonstrate, however, that the court weighed the balancing factors while giving sufficient weight to Mother's wishes. The juvenile court did not address specifically the reasons behind Mother's opposition to Grandmother's request for companionship time and did not address the evidentiary basis upon which Mother's valid concerns were based. Nor did the court recognize that Mother's wishes carry with it the presumption that she is acting in the best interest of Owen by asking that companionship time be denied. *See In re N.C.W.*, 2014-Ohio-3381 at ¶ 33; *In re K.M.-B.*, 6th Dist. Lucas No. L-15-1037, 2015-Ohio-4626, ¶ 48 (juvenile court should have started with the presumption that Mother, as a fit parent, acted in the best interest of her child when choosing to deny visitation with grandmother).

{¶ 34} Instead, the juvenile court primarily, if not solely, focused upon the "extraordinary" relationship and close bond between Grandmother and Owen. We do not question the juvenile court's determination that Owen enjoys a good and positive relationship with Grandmother and that he would benefit from maintaining such relationship. However, in view of Mother's legitimate reasons for opposing companionship time, something more is required in order for Mother's constitutional right to the care and management of Owen to be subordinated to Grandmother's statutory right to companionship time. *See Troxel*, 530 U.S. at 72-73. A trial court may not presume visitation with a grandparent is in the best interest of the child. Rather, the burden is on the grandparent to prove visitation would be in the best interest of the child. *M.H.*, 2022-Ohio-4777 at ¶ 46. While we have no issue with finding that Owen's relationship with Grandmother is important to the decision and overall weighing of the factors, we find it unreasonable that the juvenile court did not weigh this limited basis for why companionship time should be granted more specifically against the fact that Mother opposes companionship time and that Mother was acting in Owen's best interest by opposing Grandmother's request for companionship time. *See In re N.C.W.* at ¶ 35.

{¶ 35} We fully acknowledge that a fit parent's wishes to end visitation with a nonparent are not irrebuttable, as nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest. *See Rowell*, 2012-Ohio-4313 at ¶ 21. Even so, the well-established law is that a fit parent is presumed to act in the best interest of his or her child. The juvenile court's decision did not incorporate that presumption into its analysis of the factors. We therefore find that the juvenile court abused its discretion by granting Grandmother's complaint for companionship time with Owen. Mother's second assignment of error is well-taken and sustained.

{¶ 36} In light of all of the foregoing, we reverse the judgment of the juvenile court

granting Grandmother's complaint for companionship time with Owen and remand the matter for the juvenile court to accord special weight to Mother's wishes and concerns as set forth in this opinion and based upon the record before the juvenile court. In doing so, the juvenile court must recognize and start with the presumption that Mother is acting in Owen's best interest by opposing Grandmother's request for companionship time and requesting that it be denied.

{¶ 37} Judgment reversed and remanded for further proceedings consistent with this opinion.

HENDRICKSON, P.J., and BYRNE, J., concur.